UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YOLANDE BOATWRIGHT,                          Case No. 11-14427

             Plaintiff,                      John Corbett O'Meara
v.                                           United States District Judge

COMMISSIONER OF SOCIAL SECURITY,             Michael Hluchaniuk
                                             United States Magistrate Judge

             Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 14)

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On October 7, 2011, plaintiff Yolande Boatwright filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

72.1(b)(3), District Judge Corbett O'Meara referred this matter to the undersigned

for the purpose of reviewing the Commissioner's decision denying plaintiff's claim

for a period of disability and disability insurance benefits.  (Dkt. 3).  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 9, 14).

### B.    Administrative Proceedings

Plaintiff filed the instant claims on January 20, 2009, alleging that she was

disabled on July 1, 2006. (Dkt. 7-5, Pg ID 123-25).  The claim was initially

disapproved by the state agency responsible for making disability determinations on behalf of the Commissioner on September 2, 2009.  (Dkt. 7-3, Pg ID 102). Plaintiff requested a hearing and on May 11, 2011, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Patricia S. McKay, who considered the case *de novo*.  (Dkt. 7-2, Pg ID 64-100).  At that time, plaintiff moved to amend her disability onset date to June 1, 2008. (Dkt. 7-2, Pg ID 32; Dkt 7-5, Pg ID 136). In a decision dated June 16, 2011, the ALJ found that plaintiff was not disabled. (Dkt. 7-2, Pg ID 29-41).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when, after review of additional exhibits (Dkt. 7-2, Pg ID 21-28),[1] the Appeals Council, on September 2, 2011, denied plaintiff's request for review.  (Dkt. 7-2, Pg ID 18-21); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

     For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

---

     [1]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

## II.     FACTUAL BACKGROUND

### A.     ALJ's Findings

At the time of the hearing, plaintiff was 54 years old.  (Dkt 7-2, Pg ID 71).

Plaintiff's relevant work history included work as a secretary, home health aide,

resident care technician, CNA, and a care coordinator.  (Dkt. 7-2, Pg ID 142-49).

In denying plaintiff's claims, defendant Commissioner considered a history of

idiopathic dilated cardiomyopathy, status/post cataract excision and lens implant of

the left eye, blindness in the right eye and history of chronic retinal detachment of

the right eye status/post repair, hypertension and major depression as possible

bases of disability.  (Dkt. 7-2, Pg ID 34-35).

The ALJ applied the five-step disability analysis to plaintiff's claim and

found at step one that plaintiff had not engaged in substantial gainful activity since

June 1, 2008.  (Dkt. 7-2, Pg ID 34).  At step two, the ALJ found that plaintiff's

history of idiopathic dilated cardiomyopathy, status/post cataract excision and lens

implant of the left eye, and blindness in the right eye and history of chronic retinal

detachment of the right eye status/post repair were "severe" within the meaning of

the second sequential step.  (Dkt. 7-2, Pg ID 34-35).  The ALJ found that plaintiff's

medically determinable impairments of hypertension and major depression were

3

nonsevere.  (Dkt. 7-2, Pg ID 35-36).  At step three, the ALJ found no evidence that

plaintiff's combination of impairments met or equaled one of the listings in the

regulations.  (Dkt. 7-2, Pg ID 36).  At step four, the ALJ found that plaintiff could

perform her past relevant work as a home health aide and care

coordinator/secretary, and thus denied benefits.  (Dkt. 7-2, Pg ID 39).  The ALJ

further found, in the alternative, that plaintiff is denied benefits because she could

perform a significant number of jobs available in the national economy; namely, a

cashier, grocery clerk, cashier II, information clerk and gate house guard.  (Dkt. 7-

2, Pg ID 39-40).

### B.    Plaintiff's Claims of Error

Plaintiff first claims that the ALJ's findings regarding plaintiff's

impairments were not supported by substantial evidence.  Specifically, plaintiff

contends that the ALJ ignored all medical evidence in reaching her finding that

plaintiff does not have severe impairments of depression and anxiety, with

corresponding nonexertional functional limitations.  Plaintiff states that she was

diagnosed with major depressive disorder by her treating psychiatrist Dr. Mahajan,

but that the ALJ "dismisse[d]" this evidence "without any rationale whatsoever."

The plaintiff further contends that the ALJ "cherry-pick[ed]" testimony to make

her own medical determination that plaintiff has no functional limitations in the

broad areas of daily living, social functioning, and concentration, persistence, or

4

pace, without citing any treating or non-treating medical sources as the basis of her conclusions, and that the ALJ inaccurately characterized plaintiff's testimony regarding whether she was involved with her church and attends church regularly.

Plaintiff also argues that the ALJ's residual functional capacity determination did not accurately portray plaintiff's physical and mental limitations. The ALJ determined that plaintiff has the RFC to perform light work that requires only occasional climbing of stairs, crouching, crawling, kneeling and stooping/bending, and that the work should avoid workplace hazards such as dangerous, moving machinery, unprotected heights, and the climbing of ladders, and should not involve job duties that require depth perception. (Dkt. 7-2, Pg ID 37-39). Plaintiff argues that the ALJ failed to evaluate whether plaintiff was capable of a competitive work schedule, as required by SSR 96-8p, which provides:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

SSR 96-8p. Plaintiff contends the ALJ failed to conduct this analysis.

Plaintiff argues that the ALJ's RFC does not consider plaintiff's severe impairment of cardiomyopathy, which she contends would require her to lay down

and take unscheduled work breaks.  She also claims that the ALJ rejects any mental health problems.  Plaintiff also argues that the ALJ's RFC does not consider plaintiff's right eye blindness or concentration problems related to severe fatigue and pain.  Plaintiffs complains that the only nonexertional limitation in the ALJ's RFC is that plaintiff cannot perform work that would require depth perception, which she claims is inadequate considering her right eye blindness and depth perception issues in her left eye.  Plaintiff further complains that the ALJ does not mention plaintiff's claimed pain or side effects of the numerous medications she is taking.

### C.    The Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ's findings regarding plaintiff's impairments and their limitations were supported by substantial evidence.  First, although plaintiff has been diagnosed with cardiomyopathy, the medical record evidence indicates that it does not cause significant functional limitations. Plaintiff had a stress test performed in June 2008, which revealed a "[l]ow likelihood of angiographically-significant coronary artery disease." (Dkt. 7-7, Pg ID 310-11). Plaintiff first saw Dr. Samir A. Dabbous, a cardiologist, for a new patient evaluation on June 30, 2008, because plaintiff needed cardiac clearance to have surgery on her eyes due to cataracts.  (Dkt. 7-8, Pg ID 376-77).  Dr. Dabbous noted shortness of breath and cleared plaintiff for cataract surgery.  *Id.*  An

echocardiogram revealed that plaintiff's left ventricle cavity is mildly dilated, with normal wall thickness, no wall abnormalities and an ejection fraction of 55%, and evidence of mild aortic valve regurgitation, moderate to severe mitral regurgitation, and moderate tricuspid valve regurgitation. (Dkt. 7-8, Pg ID 379-80). A cardiac catheterization performed in July 2008 revealed no significant coronary artery disease and good left ventricular function. (Dkt. 7-7, Pg ID 316-17). Dr. Dabbous conducted a follow-up examination of plaintiff later in July 2008 for complaints of exertional shortness of breath, and noted that plaintiff should return for follow-up evaluations on an as needed basis. (Dkt. 7-7, Pg ID 314-15).

Sonia Rameriz, M.D., evaluated plaintiff for the state agency on June 24, 2009. (Dkt. 7-8, Pg ID 410-13). Dr. Rameriz stated that plaintiff had controlled hypertension, cardiomyopathy, 20/40 vision in her left eye and blindness of the right eye, and noted that "[t]he reason [plaintiff] stopped working was because she could not see anymore and her left eye just underwent cataract surgery, otherwise she appears to be clinically stable." *Id.*

The Commissioner also argues that the ALJ properly considered the functional limitations resulting from plaintiff's eye impairments. According to the record, plaintiff complained of suddenly blurred vision in her left eye in March 2008. (Dkt. 7-8, Pg ID 352-53, 358-60). Plaintiff was diagnosed with a white cataract in her left eye and had a successful cataract procedure performed in July

2008 to address this problem. (Dkt. 7-7, Pg ID 305-08). A follow-up appointment noted that plaintff was "doing great" and that her "vision improved to 20/50." (Dkt. 7-8, Pg ID 341). Plaintiff returned to the Kresge Eye Institute in January and June 2009, complaining of pain and redness in her eyes, and the doctor noted that the plaintiff's eye condition is mild and seems stable. (Dkt. 709, Pg ID 464-74).

On June 23, 2009, Gamil Soliman, M.D., an ophthalmologist, examined plaintiff at the request of the state agency, and noted that plaintiff had no vision in her right eye, 20/40 vision in her left eye unaided, and 20/25 as corrected, and minimal peripheral vision loss. (Dkt. 7-8, Pg ID 405-08). Dr. Soliman opined that plaintiff cannot do any work that requires depth perception. *Id.* On January 29, 2010, Asheesh Tewari, M.D., informed plaintiff's treating physician, Dr. Barry Bronstein, that plaintiff had a chronic retinal detachment in the right eye that is unlikely to improve, and that her left eye is stable with 20/30 vision, and recommended a follow-up evaluation in six months. (Dkt. 7-8, Pg ID 422). Plaintiff returned to the Kresge Eye Institute in February 2010 complaining of dryness in her eyes, but denying any pain or change in vision. (Dkt. 7-9, Pg ID 460-62).

The state agency physician opined that plaintiff can do light work with occasional postural activities and no other limitations other than depth perception. (Dkt. 7-8, Pg ID 414-21). The Commissioner explains that plaintiff's claim that

the ALJ failed to impose nonexertional requirements in the RFC is wrong because postural limitations, in addition the visual depth perception limitation, are nonexertional.  *See* 20 C.F.R. § 404.1569(c)(1)(iv)-(v).

The Commissioner also argues that the ALJ properly considered plaintiff's claimed mental impairments.  Plaintiff sought mental health treatment at the New Center Community Mental Health Services starting in October 2010. (Dkt. 7-9, Pg ID 449-59; 478).  Swam Mahajan, M.D., conducted a psychiatric evaluation of plaintiff on October 21, 2010. (Dkt. 7-9, Pg ID 481-82).  He noted that plaintiff was alert and oriented x3, neatly and appropriately dressed, cooperative, had good grooming and hygiene, and that she made good eye contact, but that her affect was constricted.  *Id.*  Dr. Mahajan diagnosed plaintiff with Major depressive disorder, recurrent, and moderate nicotine abuse, and recommended medication for plaintiff's depression and sleep problems and therapy.  *Id.*

In November 2010, plaintiff complained about feeling agitated and depressed, noted that her best friend and her nephew passed away in the last two weeks, and  stated that the medications were not helping.  (Dkt.  7-9, Pg ID 477).  Plaintiff attended monthly appointments in January 2011 through April, 2011 to receive treatment for her depression, including medication.  (Dkt. 7-9, Pg ID 475-77).  Plaintiff generally reported that she was "doing well on her medications and [wa]s feeling very good overall," "doing well and fully blessed," and the therapist

noted no signs or symptoms and a congruent affect.  *Id.*  Plaintiff complained in

May 2011 of feeling depressed, sleeping at all times of the day, not having the

energy to do anything, and getting agitated easily, but also noted that she had been

without her medications for seven days. (Dkt. 7-9, Pg ID 475).  The Commissioner

argues that the ALJ did not "cherry pick" the record, but rather properly reviewed

the record and observed that plaintiff had "recently started receiving treatment"

and "appear[ed] to be doing well according to the therapist notes."  (Dkt. 7-2, Pg

ID 35).  Thus, the ALJ's conclusion that plaintiff had done well on medication is

supported by the record.

 The Commissioner further contends that the Court should defer to the ALJ's

credibility finding, which is supported by the record.  The ALJ noted

inconsistencies between plaintiff's testimony at the hearing and the record

evidence.  The Commissioner states that the ALJ heard and saw plaintiff make the

statements at issue, and that the ALJ's credibility determinations should be given

great weight and deference.

 Finally, the Commissioner argues that the ALJ did not violate SSR 96-8p

because "[a]lthough a function-by-function analysis is desirable, SSR 96-8p does

not require ALJs to produce such a detailed statement in writing."  *Delgado v.*

*Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 547 (6th Cir. 2002) (quoting *Bencivengo*

*v. Comm'r of Soc. Sec.*, 251 F.3d 153 (Table) No. 00-1995 (3d Cir. Dec. 19, 2000)

(distinguishing between what an ALJ must consider and what he must discuss in written opinion)).  The Commissioner argues that the ALJ sufficiently articulated his RFC finding and was not required to specifically articulate how long plaintiff could perform various work-related tasks.

## III.   ANALYSIS

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul.

96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the

15

> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

16

substantial evidence supports the ALJ's decision, it must be upheld.

### C.      Analysis and Conclusions

#### 1.      The ALJ's findings regarding plaintiff's physical and mental impairments were supported by substantial evidence

Plaintiff first claims that the ALJ ignored the medical evidence, and specifically that of a psychiatrist, Dr. Mahajan, when she found that plaintiff does not have severe impairments of depression and anxiety.  However, plaintiff fails to articulate the record evidence or opinion(s) she believes the ALJ ignored.  The ALJ agreed that plaintiff had the medically determinable impairment of depression. The record shows that the ALJ did acknowledge Dr. Mahajan's diagnosis of plaintiff with major depression, and also recognized that plaintiff had been receiving treatment and appeared to be doing well.  (Dkt. 7-2, Pg ID 35).  The ALJ found that plaintiff's major depression "does not translate to function-by-function limitations applicable to the residual functional capacity below."  *Id.*

The record reveals that plaintiff sought mental health treatment beginning in October 2010, and attended monthly appointments through April 2011 during which plaintiff reported "doing well on her medications" and "feeling very good overall."  (Dkt. 7-9, Pg ID 475-77).  Plaintiff's therapist noted that plaintiff had no signs or symptoms and a congruent effect.  *Id.*  Although plaintiff complained of feeling depressed in May 2011, the therapist noted that plaintiff had been without her medications for seven days.  *Id.*  Thus, the ALJ's opinion that plaintiff had

17

done well on her medication is supported by substantial evidence.  The ALJ also properly noted that plaintiff has good grooming, goes to church and watches television in support of his findings.  As a matter of law, the ALJ may consider plaintiff's household and social activities in evaluating her assertions of pain or limitations.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds).

Dr. Mahajan never offered an opinion on the extent of functional limitations (if any) caused by plaintiff's depression.  As the Commissioner properly argues, at most, Dr. Mahajan recorded plaintiff's reports of limitations, but the recording of self-reported symptoms and limitations does not constitute a medical opinion. *Mitchell v. Comm'r of Soc. Sec.*, 330 Fed. Appx. 563, 569 (6th Cir. 2009) ("[T]he mere regurgitation of third-party statements concerning a claimant's alleged symptoms does not constitute objective medical evidence subject to the protections of the good reasons rule.").  Thus, the ALJ's findings are supported by substantial evidence.

The ALJ's RFC findings regarding plaintiff's physical impairments are also supported by substantial evidence.  While the ALJ found that plaintiff had the

18

severe impairment of cardiomyopathy, the record indicates that it was not causing significant functional limitations. The consultative examiner wrote that, other than plaintiff's eye conditions, "she appear[ed] to be clinically stable." (Dkt. 7-8, Pg ID 410-413). The state agency reviewing physician reported that plaintiff developed cardiac problems in 1988 when pregnant, but that her "cardiac issue appears to have pretty much resolved currently with [medication.]" (Dkt. 7-8, Pg ID 415-16). Plaintiff's cardiologist noted plaintiff's subjective complaints of shortness of breath, and also noted a normal physical examination and no significant coronary artery disease. (Dkt. 7-8, Pg ID 373-74). A stress test demonstrated low likelihood of angiographically-significant coronary artery disease (Dkt. 7-7, Pg ID 310-11), cardiac catheterization showed no significant stenosis, good left ventricular function and an ejection fraction of 55% (Dkt 7-7, Pg ID 316-17), and an echocardiogram revealed a mildly dilated left ventricle, an ejection fraction of 55%, mild aortic regurgitation, moderate to severe mitral regurgitation and moderate tricuspid valve regurgitation. (Dkt. 7-7, Pg ID 379-80). The ALJ's RFC, limiting plaintiff to only occasional climbing of stairs, crouching, crawling, kneeling and stooping/bending, adequately accommodated plaintiff's cardiomyopathy and shortness of breath and is supported by substantial evidence.

Similarly, plaintiff's eye impairments were adequately accommodated in the ALJ's RFC. The consultative ophthalmologist found plaintiff to have 20/40 vision

in her left eye without glasses, and 20/25 vision as corrected.  (Dkt. 7-8, Pg ID 405-08).  While acknowledging that plaintiff is permanently blind in her right eye, the consultative ophthalmologist only concluded that plaintiff cannot perform any work that requires depth perception.  *Id.*  The record supports the doctors' opinions.  Even in June 2009, when plaintiff was complaining of possible inflammation in her left eye, her vision was "not affected."  (Dkt. 7-9, Pg ID 464-68).  Plaintiff's doctor reported in early 2010 that plaintiff had 20/30 vision in her left eye and that the eye was "stable."  (Dkt. 7-9, Pg ID 460-63).  Plaintiff successfully underwent a cataract procedure in June 2008. (Dkt. 7-7, Pg ID 305-07).  Plaintiff has not cited any record evidence that she is more limited than the ALJ found.

Finally, in this case, no treating source provided an assessment relating to plaintiff's work-related limitations or opined that plaintiff is disabled.  However, in a June 2009 consultative ophthalmology examination by Dr. Gamil Soliman, the doctor noted that plaintiff is permanently blind in the right eye and only found that plaintiff was precluded from performing work that required depth perception. (Dkt. 7-8, Pg ID 405-08). In addition, the record contains an assessment by a state agency reviewing physician, who found that plaintiff is capable of sustained work activity.  Notably, in August 2010, Dr. Demetrio Nasol, M.D., reviewed plaintiff's file and concluded that plaintiff was able to lift 10 pounds frequently and 20

pounds occasionally, sit and stand six hours in an eight-hour workday, occasionally climb stairs, balance, stoop, kneel, crouch and crawl, and no depth perception. (Dkt. 7-8, Pg ID 414-21).  The ALJ also imposed additional non-exertional limitations to account for plaintiff's impairments, precluding plaintiff from working near hazards such as moving machinery, unprotected heights and climbing of ladders.  (Dkt. 7-2, Pg ID 39).  Plaintiff has simply pointed to no medical evidence suggesting that she is more limited than the ALJ found.  Accordingly, the ALJ's opinion is supported by substantial evidence.

### 2.    The ALJ's credibility finding

Plaintiff also argues that the ALJ improperly distorted her testimony regarding her attendance at church in support of her findings.  The ALJ did note that plaintiff's testimony at the hearing was inconsistent with the information provided in the record.  (DKT 7-2, Pg ID 38).  Specifically, the ALJ noted that plaintiff indicated in her February 2008 function report that she was active in her religious community, but then stated at the May 11, 2011 hearing, that she moved in with her daughter in 2009 and has not been involved in her church.  *Id.* However, records submitted after the hearing showed that plaintiff remained very active in her church, volunteering and even going on weekend retreats as recently as November 2010.  *Id.*  The ALJ concluded that the inconsistencies suggest that the information provided by plaintiff may not be entirely reliable.

21

The ALJ also acknowledged the plaintiff and her attorney completed disability function reports indicating that plaintiff suffers from depression and anxiety, but gave very little weight to these reports as biased in favor of plaintiff and as not supported by the medical evidence.  The ALJ concluded that the information provided by plaintiff may not be entirely reliable.  (Dkt. 7-2, Pg ID 37-38).  "When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses."  *Graham v. Comm'r of Soc. Sec.*, 2009 WL 3602085, at *6 (E.D. Mich. Oct. 27, 2009) (citing *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility")).

The issue is whether the ALJ's credibility determinations are supported by substantial evidence.  As the Sixth Circuit has recognized, "[u]pon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability.").  In reviewing an ALJ's credibility determinations, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [plaintiff] are reasonable and supported by substantial

evidence in the record." *Jones*, 336 F.3d at 476.

Here, the ALJ noted that plaintiff's impairments could reasonably be expected to cause the symptoms alleged, but plaintiff's statements concerning the intensity, persistence and limiting effects were not credible to the extent they are not consistent with the RFC and the medical evidence. (Dkt. 7-2, Pg ID 38). As set forth above, in rendering his credibility opinion, the ALJ noted plaintiff's alleged symptoms conflicted with plaintiff's daily activities and the medical record. (Dkt. 7-2, Pg ID 37-39). This finding supports the ALJ's credibility determination. *See Diamond v. Comm'r of Soc. Sec.*, 154 Fed. Appx. 478, 484 (6th Cir. 2005) (holding that inconsistencies in the plaintiff's representations as to the extent of his limitations justified the ALJ's reluctance to fully accept plaintiff's own account of his condition). As in *Diamond*, the court should not second-guess the ALJ's credibility determination where the record reflects that the decision of the ALJ to reject plaintiff's unsubstantiated restrictions is supported by substantial evidence.

### 3.   The ALJ did not violate SSR 96-8p

Finally, plaintiff argues that the ALJ violated SSR 96-8p, claiming that the ALJ failed to find that plaintiff was capable of working a competitive work schedule. However, "[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." *See*

*Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 547 (6th Cir. 2002) (citing

*Bencivengo v. Comm'r of Soc. Sec.*, No. 00-1995, 251 F.3d 153 (Table) (3d Cir.

Dec. 19, 2000).  SSR 96-8p requires an ALJ to individually assess the exertional

(lifting, carrying, standing, walking, sitting, pushing and pulling) and non-

exertional (manipulative, postural, visual, communicative, and mental functions)

capacities of the plaintiffs in determining a plaintiff's RFC.  *See id.* (citation

omitted).  The ALJ is not required to discuss those capacities for which no

limitation is alleged.  *Id.*  "[T]he ALJ need only articulate how the evidence in the

record supports the RFC determination, discuss the claimant's ability to perform

sustained work-related activities, and explain the resolution of any inconsistencies

in the record."  *Id.*  Here, as discussed above, the ALJ discussed the medical and

other evidence on the disputed issues and her narrative discussion adequately

explained the basis of plaintiff's RFC.  The ALJ thus sufficiently articulated her

residual functional capacity finding under SSR 96-8p.  For these reasons, and

because a review of the ALJ's decision and the administrative record reveals that

the ALJ's decision is well-supported by substantial evidence, plaintiff's claim of

error should be rejected.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and

Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health

and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.


Date: February 20, 2013                    s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I certify that on February 20, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Joshua L. Moore, Theresa M. Urbanic, AUSA, and the Commissioner of Social Security.

                                           s/Tammy Hallwood
                                           Case Manager
                                           (810) 341-7850
                                           tammy_hallwood@mied.uscourts.gov

26
